UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CORNING INCORPORATED,

                          Plaintiff,                    No. 05-CV-6532 CJS

     -vs-

                                                DECISION AND ORDER

VWR INTERNATIONAL, INC.,

                          Defendant.

_____

APPEARANCES

For plaintiff:                  Paul J. Yesawich, III, Esq.
                                 David J. Edwards, Esq.
                                 Harris Beach PLLC
                                 99 Garnsey Road
                                 Pittsford, New York 14534

For defendant:               Phillips Lytle LLP
                                 Mark J. Moretti, Esq.
                                 1400 First Federal Plaza
                                 Rochester, New York 14614

                                 Michael W. McTigue, Jr., Esq.
                                 Drinker Biddle & Reath LLP
                                 One Logan Square
                                 18th & Cherry Streets
                                 Philadelphia, Pennsylvania 19103-6996

INTRODUCTION

This is an action in which plaintiff Corning ("plaintiff"), a maker of glass laboratory products,  is suing its former customer, VWR ("defendant"), for breach of contract, unfair competition, and trademark infringement.  Now before the Court is defendant's motion [#9] to dismiss plaintiff's breach of contract claim, and plaintiff's cross-motion [#15] to amend the complaint.  For the reasons that follow defendant's application is granted and plaintiff's cross-motion is denied.

BACKGROUND

Defendant is "a leading worldwide distributor of scientific equipment and supplies, including laboratory glassware."  (Def. Memo [#9-3] p. 2).  Plaintiff's breach of contract claim arises from a document which the parties executed in 2001, entitled "Memorandum of Agreement Corning/VWR Glass Standardization Plan" ("the memorandum").  The memorandum states, in relevant part:

> Corning Incorporated and VWR International have agreed to the standardization[1] of Corning's Pyrex reusable glass product line within VWR's North American distribution channel.  This agreement will replace the corporate performance rebate program for reusable glass that is currently intact.  This agreement will be valid for seven (7) years, effective January 1, 2002 and subject to the terms and conditions stated.

The memorandum then goes on to describe two different "standardization programs," a "Selective Standardization Program" ("Selective Program") and a "Full Standardization Program" ("Full Program").  As to the first, the "Selective Program," the memo states, in relevant part:

---

[1]The memorandum does not define the term "standardization," though plaintiff contends that the term "denotes exclusivity" within the glass industry. (Pl. Memo [#16] p. 2, n. 1).

Corning will pay VWR an annual rebate in the amount of 5.0% of the total purchase price for Corning's reusable glass product line in consideration for the following.  Additionally, Corning will generate an annual rebate of $251,000 as compensation for sales of Corning's disposable glass products (DS) and OEM products (tubing and rod).

> VWR will catalog and promote only Corning's Pyrex reusable glass product line for all high volume "A" items, and select lower volume items.

> VWR will carry a level of Corning reusable glass inventory sufficient to service the market consistent with VWR's customer service objectives.  VWR, together with Corning, will develop a long-term inventory management plan.

> All VWR systems, inventory management and procurement processes will be modified to reflect Corning as the first product for the pre-determined items.  Customers with VWRPlus will have access to glassware from other companies.
>
> ***
>
> VWR and Corning will mutually develop and execute a communication plan and conversion plan of non-Corning product to Corning.

> VWR will provide Corning with Point of Sale detail going forward and retroactive to January 1, 2001, including detail on non-Corning products being standardized.

> VWR will provide Corning with a monthly forecast and reasonable notice of incremental changes on a timely basis.

(Memorandum Agreement p. 1).  The memo then discusses the "Full Program," stating,

in relevant part:

> Corning will pay VWR an additional rebate in the amount of 3% of the total purchase price for Corning's reusable glass product line in consideration for the following:

> > VWR will catalog inventory and sell only Corning's Pyrex reusable glass product line, except as warranted by Tier II customers, to the exclusion of other non-Corning brands, including private label reusable glass.

3

> VWR's private label line of disposable glass serological
> pipets will be exclusively sourced through Corning.
> ***
> VWR will designate a project team, working with Corning, to
> develop an improvement plan for the purchase, sale and
> service of the business related to the program.
> ***
> Corning will buy back all other glassware suppliers' products
> within VWR inventory up to $100,000.  Additionally, Corning
> will buy back 50% of the inventory over $100,000.  VWR will
> make every effort to minimize the number of products.  The
> details of the inventory disposal plan will be mutually
> developed in the first quarter of 2002 with a target date of
> complete disposition by the end of 2002.

(*Id*. at pp. 2-3).  As indicated, under the Full Program defendant was not required to buy exclusively from Corning with regard to its Tier II customers.  Although the term "Tier II customers" is not explained in the memorandum, plaintiff states that the term denotes "certain large institutional customers" who "were likely to insist that VWR occasionally supply them with certain non-Corning products." (Proposed Second Amended Complaint [#16] ¶ 20).  According to plaintiff, the Full Program "require[d] . . . a commitment to distribute a broader range of products to a larger group of customers," while the Selective Program was "more limited and . . . subsumed within the [Full Program]." (*Id*. at ¶ 16).

The memorandum on its face appears to give defendant the choice of proceeding under either the Selective Program or the Full Program.  Plaintiff alleges, however, that "[f]rom the inception of their discussions, Corning and VWR intended to implement the Full Standardization Program." (*Id*. at ¶ 17).  As proof, plaintiff states that in November 2001, defendant executed the memorandum and returned it to plaintiff with a letter stating, in relevant part:

4

[L]et the attached document serve as the basis of our agreement to proceed on our Glass Standardization Program.  As discussed, we intend to take full advantage of both the 'Selective Standardization Program' and the 'Full Standardization Program.'  We intend to launch this program no later than January 1, 2002.  We reserve the right not to announce our intent to embark on this program to our associates, suppliers, or customers until we are comfortable that we can fulfill our commitments of communication, logistics, and tools.  Announcement of our intent will be no later than December 17th, 2001.  Our expectations are that Corning will adhere by these dates as well in their [sic] communication to associates, distributors and customers.  Certainly, our decision will launch some interesting reactions in the scientific industry.  We believe our choice is in the best interest of the customer, VWR International and Corning and we look forward to the next chapter in our strategic relationship.

(*Id*. at ¶ 18).  The parties proceeded in accordance with the Full Program in 2002, 2003 and 2004.  However, defendant terminated the agreement effective January 1, 2005.

Plaintiff commenced the subject action and asserted various claims against defendant including a claim for breach of contract. (Amended Complaint ¶ 8). Defendant has moved to dismiss the breach of contract claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant contends that the memo is not a binding contract, because it did not impose any obligation on VWR and because it does not comply with the statute of frauds, since there is no term concerning quantity. Plaintiff responded by cross-moving to amend the Amended Complaint, though plaintiff maintains that the Amended Complaint is legally sufficient to withstand the motion to dismiss.  On this point, plaintiff states that the proposed amendment is merely for the purpose of adding additional background information regarding the formation of the alleged contract.  Plaintiff contends that the memo constitutes a binding agreement, and that no particular quantity is stated because the contract is a "requirements" contract.  Defendant filed reply papers, in which it reiterates its arguments, and further

contends that the motion to amend should be denied because the amendment would be futile.

Counsel for the parties appeared before the undersigned for oral argument of the motions on September 28, 2006.  The Court has thoroughly considered the parties' submissions and the arguments of counsel.

ANALYSIS

Motions to amend pleadings are generally governed by Rule 15(a) of the Federal Rules of Civil Procedure.  It is well settled that "[l]eave to file an amended complaint shall be freely given when justice so requires, Fed.R.Civ.P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp*., 244 F.3d 104, 110 (2d Cir. 2001) (*quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); internal quotation marks omitted).

As indicated earlier, defendant contends that plaintiff's motion should be denied due to futility. (Def. Reply Brief [#18] p. 10, n. 13)  To establish "futility" in this regard, a defendant must establish that the plaintiff can prove no set of facts in support of his amended claims. *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (citations and internal quotation marks omitted).  Therefore, "[d]eterminations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss." *Nettis v. Levitt*, 241 F.3d 186, 194 n. 4 (2d Cir. 2001), overruled on other grounds by *Salyton v. American Exp. Co.*, 460 F.3d 215 (2d Cir. 2006).

It is well settled that in determining a motion under Fed. R. Civ. P. 12(b)(6), a

6

district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000).  While the Court must accept as true a plaintiff's factual allegations, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-401 n. 3 (2d Cir.1994)). The Court "may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotations omitted)(*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Generally on a motion to dismiss pursuant to Rule 12(b)(6), the Court must consider only the complaint, which is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)(citations and internal quotations omitted).  Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id.* at 153.

The issue which the Court must consider here is whether or not the proposed Second Amended Complaint states a claim for breach of contract.  In that regard, defendant alleges that the memorandum was not a bilateral contract, but merely an offer by Corning which gave VWR the opportunity to create binding unilateral contracts.

7

(Def. Memo [#9-3] p. 7).  Defendant further contends that although it accepted plaintiff's offer in 2002, 2003, and 2004 by performing in the manner indicated in the memorandum, it cannot be liable for breach of contract for years after 2004, since it never accepted plaintiff's offer in those years.  Defendant also alleges that the memorandum fails to satisfy the statute of frauds, since it contains no quantity term.  As to the Statute of Frauds, defendant maintains that under the Selective Program, it was required only to "catalog and promote," but not sell, plaintiff's products, and, moreover, under the Full Program it was not required to buy exclusively from plaintiff, and could buy other companies products for its Tier II customers.  Plaintiff, on the other hand, alleges that a bilateral contract for a term of seven years  was formed.[2]  Plaintiff further argues that defendant agreed to proceed under the Full Program for all seven years, and that the Full Program is a requirements contract which satisfies the statute of frauds.

> Under the law of the State of New York, which applies here,
>
> [i]n interpreting a contract, words and phrases are given their plain meaning. Rather than rewrite an unambiguous agreement, a court should enforce the plain meaning of that agreement.  Furthermore, where the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may thus be determined by summary judgment or by dismissal.

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (citations and internal quotation marks omitted).  As for the statute of frauds, in New York it is well settled that

> [t]he purpose of Statutes of Frauds is to avoid fraud by preventing the

---

[2]"A bilateral contract requires a promise for a promise. However, a unilateral contract requires only a promise by one side and acceptance by performance on the other." *Grav v. U.S.*, 14 Cl.Ct. 390, 393 (U.S. Cl.Ct. 1988).

enforcement of contracts that were never in fact made. Generally the
statute is satisfied by some note or memorandum signed by the party to
be charged that is adequate to establish an agreement when considered
in light of the admitted facts and surrounding circumstances.

*** 

New York has enacted several Statutes of Frauds, each with its own
particular language and requirements.  General Obligations Law § 5-701,
for example, provides in general terms that certain enumerated
agreements are void unless "some note or memorandum thereof be in
writing, and subscribed by the party to be charged therewith". Under this
provision, the writings must contain all the essential terms of the purported
agreement. To contrast, the Statute of Frauds applicable to the sale of
goods provides that the agreement is binding even if the writing omits or
incorrectly states a term of the agreement. Even the price need not be
specified (Uniform Commercial Code § 2-201). It is sufficient that the
writing affords a basis for believing the offered oral evidence rests on a
real transaction (Uniform Commercial Code § 2-201, comment 1). If it
does, the finder of fact may set a reasonable price ( *id*.; *cf*., Uniform
Commercial Code § 8-319 [price and quantity of securities sold must be
specified] ). Thus, the statutes may require more or less particularity in the
writings depending upon the Legislature's perception regarding the risks
of false claims inherent in the contractual setting.

*Henry L. Fox Co., Inc. v. William Kaufman Org., Ltd.*, 74 N.Y.2d 136, 140, 544 N.Y.S.2d

565, 567-68 (1989) (citations omitted).  However, even "[u]nder the UCC, the quantity

term must be stated. *Rosenfeld v. Basquiat*, 78 F.3d 84, 93 (2d Cir. 1996) ("Under the

U.C.C., the only term that must appear in the writing is the quantity.") (citing N.Y. U.C.C.

§ 2-201 cmt. 1, which states, in relevant part, that "[t]he only term which must appear is

the quantity term which need not be accurately stated but recovery is limited to the

amount stated.").

Turning to the instant case, defendant maintains that dismissal is required by *Nat*

*Nal Serv. Stations, Inc. v. Wolf*, 304 N.Y. 332 (1952), in which the New York Court of

Appeals held that an arrangement between a gasoline supplier and a gas station owner

was a mere offer to form unilateral contracts.  In that case, the agreement as described

by *Nat Nal Serv. Stations* was as follows:

> [The defendants] had an arrangement with various oil companies
> supplying oil, under which the defendants received a discount or
> allowance based upon the number of gallons of gasoline purchased by or
> through them from the companies.  In order to obtain a greater allowance,
> the defendants desired to increase the volume of their orders for gasoline,
> and hence came to me with the proposition that if I would give my orders
> for gasoline through them, thereby increasing their volume, they would
> pay to me an amount equal to the discount received by them from the oil
> companies upon whatever orders I gave to them, and if they accepted my
> orders.

*Id*. at *335*.  In finding that no contract was formed, the court stated that it was clear "that

neither party obligated itself to do anything," and that "[u]nless and until plaintiff had

offered to place an order for gasoline and the defendants had accepted such offer and

filled the order, only then did there come into existence a legal obligation, viz., the

obligation of defendants to pay the agreed discount." *Id*. at 336.

    The subject memorandum is much more detailed, but ultimately appears to give

VWR the same choice of whether or not to create a binding unilateral contract in a

given year by performing.   Most notably, the memorandum proposes two types of

standardization programs, the Selective Program and the Full Program.  The

memorandum does not indicate that either of the two programs is being selected, but

rather, merely details what VWR would have to do in order to qualify for either program.

In the absence of any further agreement between the parties, it would appear that

VWR's performance alone would determine which of the two programs would be

applicable.  Accordingly, the parties would not know which of the two programs was

being pursued unless and until VWR performed in a certain manner.  Consequently, if

the memorandum was the only evidence of the parties' agreement, the Court would

agree that the memorandum amounted to an offer by Corning to form either of two types of contract, which VWR could accept by its performance.

However, the memorandum is not the only written evidence of the parties' agreement.  Plaintiff contends that the parties further agreed that defendant would proceed only under the Full Program and that this is demonstrated by defendant's November 2001 letter in which it stated that it "intend[ed] to take full advantage of both the 'Selective Standardization Program' and the 'Full Standardization Program.' Plaintiff further contends that defendant's performance under both the Selective Program and the Full Program for three years is further evidence that the parties agreed that defendant would not proceed solely under the Selective Program.  Initially, the Court notes that in deciding whether a contract existed, the defendant's November 2001 letter together with the memorandum may be considered. *See, Evans v. Pelta*, 131 N.Y.S. 411, 412 (1st Dept. 1911) (Noting that with regard to a sale of goods, "the evidence necessary to satisfy the statute [of frauds] need not all be comprised in a single writing."); *Waxelbaum v. Schloss*, 116 N.Y.S. 42, 43 (1st Dept. 1909) ("The agreement required by the statute of frauds may be embodied in different papers having relation to each other, signed by the party to be charged; but the whole contract must be collected from the writings.") (citations omitted).  Having considered both, the Court finds that defendant's November 2001 letter is ambiguous, and can be viewed as expressing a decision by defendant to proceed under both programs, which would essentially mean that defendant would be proceeding under the Full Program, since the Selective Program is subsumed within the Full Program.  This determination largely vitiates defendant's arguments, which were premised on the notion that defendant "had

the option of electing to participate in one, both or neither" of the two programs.

However, even assuming that defendant agreed to proceed under both the Selective and Full Programs at all times, as plaintiff maintains, the Court concurs with defendant that the agreement lacks a quantity term and therefore fails to satisfy the statute of frauds.  Although defendant contends that a specific quantity term is unnecessary because the agreement is a "requirements contract," the Court disagrees, since the agreement does not require defendant to buy its reusable glass exclusively from plaintiff.  Instead, the memorandum permits defendant to buy an unspecified amount of reusable glass for its Tier II customers from other suppliers.  Plaintiff argues that "an agreement may be exclusive with respect to certain customers, and not others," but the only two cases that it cites in support of this proposition are inapposite. *See, Adipar v. PLD Intern. Corp.*, 2002 WL 31740622 at *6 (S.D.N.Y. 2002); *Access Northern Sec. Corp. v. Linear Corp.*, 1998 WL 566815 at 2 n. 4 (S.D.N.Y. 1998).  The Court has similarly been unable to find any New York case in which a non-exclusive requirements contract was found to have satisfied the statute of frauds. *Cf. MDC Corp., Inc. v. John H. Harland Co.*, 228 F.Supp.2d 387, 392 (S.D.N.Y. 2002) ("[A] requirements contract obligates the buyer to buy exclusively from a particular supplier.") (citation omitted); 1 HAWKLAND UCC SERIES § 2-306:3 ("By their very nature, output and requirements contracts involve exclusive dealing."); *but see, Advent Systems Ltd. v. Unisys Corp.*, 925 F.2d 670, 678 (3rd Cir. 1991) ("The same reasons that led courts to dispense with a specific and certain quantity term in the exclusive requirements context apply equally when a continuing relationship is non-exclusive. The same regulating

12

factor-good faith performance by the parties-applies and prevents the contracts from

being illusory.") (Applying the law of Pennsylvania).  Consequently, the Court finds that

the agreement is not a requirements contract as to reusable glass, and therefore lacks

an essential term.  Furthermore, although the memorandum imposes an exclusive

purchase requirement on defendant with regard to disposable glass serological pipets,

the absence of a quantity term for reusable glass requires the dismissal of the entire

breach of contract claim. *Dickenson v. Dickenson Agency, Inc.*, 127 A.D.2d 983, 984,

512 N.Y.S.2d 952, 953 (4th Dept. 1987) ("As a general rule, if part of an entire contract

is void under the Statute of Frauds, the whole of such contract is void."); *accord*,

*Mellencamp v. Riva Music Ltd.*, 698 F.Supp. 1154, 1162 (S.D.N.Y. 1988).

CONCLUSION

For the foregoing reasons defendant's motion [#9] to dismiss plaintiff's breach of

contract claim is granted, and plaintiff's cross-motion [#15] to amend the Amended

Complaint is denied.

SO ORDERED.

Dated: Rochester, New York
       November 20, 2006

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge