UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CORNING INCORPORATED,

                Plaintiff,            No. 05-CV-6532 CJS

   -vs-

                                                        DECISION AND ORDER

VWR INTERNATIONAL, INC.,

                Defendant.

_____

APPEARANCES

For plaintiff:               Paul J. Yesawich, III, Esq.
                               David J. Edwards, Esq.
                               Harris Beach PLLC
                               99 Garnsey Road
                               Pittsford, New York 14534

For defendant:           Phillips Lytle LLP
                               Mark J. Moretti, Esq.
                               1400 First Federal Plaza
                               Rochester, New York 14614

                               Michael W. McTigue, Jr., Esq.
                               Drinker Biddle & Reath LLP
                               One Logan Square
                               18th & Cherry Streets
                               Philadelphia, Pennsylvania 19103-6996

INTRODUCTION

     Now before the Court is plaintiff's Motion for Reconsideration [#21], asking the Court to reverse its prior Decision and Order [#20] which denied plaintiff's motion to amend its complaint and dismissed plaintiff's breach of contract claim. For the reasons

that follow, the application for reconsideration is granted, the motion to dismiss is denied, and the motion to amend is granted.

BACKGROUND

The facts of this case were set forth in detail in the prior Decision and Order [#20] and need not be repeated here. It is sufficient to note that the Court dismissed plaintiff's breach of contract claim because it found that the parties' "Memorandum of Agreement Corning/VWR Glass Standardization Plan" ("the memorandum") did not satisfy New York's Statute of Frauds, NY Uniform Commercial Code ("UCC") § 2-201. The relevant portion of the memorandum states: "VWR will catalog inventory and sell only Corning's Pyrex reusable glass product line, except as warranted by Tier II customers, to the exclusion of other non-Corning brands, including private label reusable glass." According to plaintiff, VWR agreed to buy its requirements of reusable glass from Corning, with one exception: VWR could buy reusable glass from other suppliers when requested to do so by its Tier II customers. Plaintiff contends that the parties included this provision because they anticipated that VWR's Tier II customers, that is, its "large institutional customers," "were likely to insist that VWR occasionally supply them with certain non-Corning products." (Proposed Second Amended Complaint [#15-3] ¶ 20).

Defendant moved to dismiss plaintiff's breach of contract claim, maintaining that the memorandum failed to satisfy the statute of frauds because it lacked a specific quantity term, and that it also failed to satisfy the statute of frauds as a "requirements" contract, since VWR was not required to buy it requirements of reusable glass exclusively from Corning. Plaintiff responded by arguing that, pursuant to UCC § 2-306,

the memorandum satisfied UCC § 2-201, because the alleged contract was an "exclusive requirements contract." (Pl. Mem. of Law [#16] pp. 14). Plaintiff acknowledged, in that regard, that "an agreement is a 'requirements contract' where [*inter alia*] it . . . obligates the buyer to buy goods exclusively from the seller."[1] (*Id*. at 15). Nevertheless, plaintiff asserted that the subject memorandum was a requirements contract even though it was not entirely exclusive:

> VWR's contention that potential sales of non-Corning goods to "Tier II" customers somehow vitiate the exclusivity requirement is simply wrong.
> ***
> That an agreement may be exclusive with respect to certain customers, and not others, does not render it unenforceable. See, Adipar Ltd. v. PLD Intern. Corp., 2002 WL 31740622 *6 (S.D.N.Y. 2002); Access Northern Sec. Corp. v. Linear Corp., 1998 WL 566815 *2 n.4 (S.D.N.Y. 1998).

(*Id*. at 17); (*see also, Id*. at 25) ("Thus, while VWR's customers could have 'access to glassware from other companies,' this does not alter the exclusive nature of the Agreement.").

The Court rejected plaintiff's argument and found that the memorandum failed to satisfy the statute of frauds because it was not an exclusive requirements contract. In that regard, the Court stated:

> [T]he Court concurs with defendant that the agreement lacks a quantity term and therefore fails to satisfy the statute of frauds. Although [plaintiff] contends that a specific quantity term is unnecessary because the agreement is a "requirements contract," the Court disagrees, since the agreement does not require defendant to buy its reusable glass exclusively from plaintiff. Instead, the memorandum permits defendant to buy an unspecified amount of reusable glass for its Tier II customers from other suppliers. Plaintiff argues that "an agreement may be exclusive with respect to certain customers, and not others," but the only two cases that

---

[1] Plaintiff further indicated that "[b]y its very nature, a 'requirements contract' measures quantity by the good faith requirements of the buyer," citing UCC § 2-306(1). (*Id*. at 21).

> it cites in support of this proposition are inapposite. *See, Adipar v. PLD Intern. Corp.*, 2002 WL 31740622 at *6 (S.D.N.Y. 2002); *Access Northern Sec. Corp. v. Linear Corp.*, 1998 WL 566815 at 2 n. 4 (S.D.N.Y. 1998). The Court has similarly been unable to find any New York case in which a non-exclusive requirements contract was found to have satisfied the statute of frauds. *Cf. MDC Corp., Inc. v. John H. Harland Co.*, 228 F.Supp.2d 387, 392 (S.D.N.Y. 2002) ("[A] requirements contract obligates the buyer to buy exclusively from a particular supplier.") (citation omitted); 1 HAWKLAND UCC SERIES § 2-306:3 ("By their very nature, output and requirements contracts involve exclusive dealing."); *but see, Advent Systems Ltd. v. Unisys Corp.*, 925 F.2d 670, 678 (3rd Cir. 1991) ("The same reasons that led courts to dispense with a specific and certain quantity term in the exclusive requirements context apply equally when a continuing relationship is non-exclusive. The same regulating factor-good faith performance by the parties-applies and prevents the contracts from being illusory.") (Applying the law of Pennsylvania). Consequently, the Court finds that the agreement is not a requirements contract as to reusable glass, and therefore lacks an essential term.

(*Id*. at 12-13).

Plaintiff now asks the Court to reconsider that decision, pursuant to Rule 59(e), because, it contends, the Court misapplied the law.[2] Specifically, plaintiff contends that the Court failed to appreciate "the parties' nearly three-year course of performance under the Agreement." (Memo of Law [#21-6] p. 1). As to that, plaintiff contends that the Court failed to understand that it should "look to performance as the decisive element in analyzing requirements contracts and for supplying terms not explicitly set forth in the document memorializing the parties' agreement." (*Id*.).[3] Moreover, plaintiff

---

[2] In its motion, plaintiff incorrectly states that "[t]his Court found that VWR implemented the Full Standardization Program," citing page 11 of the Court's prior Decision and Order [#20]. Actually, the Court merely stated that a letter produced by plaintiff was ambiguous and *could be* viewed as expressing a decision by VWR to implement the Full Program.

[3] Although the Court is granting plaintiff's motion for the reasons set forth below, it does not believe that the parties' alleged course of dealing is relevant to determining whether the written memorandum satisfies the statute of frauds. *See, Bazak Intern. Corp. v. Mast Industries, Inc.*, 73 N.Y.2d 113, 118, 538 N.Y.S.2d 503, 505 (1989) ("Parol evidence, even in affidavit form, is immaterial to the threshold issue whether the documents are sufficient on their face to satisfy the Statute of Frauds. Consideration of parol evidence in assessing the adequacy of a writing for Statute of Frauds purposes would otherwise

contends that in New York, a "non-exclusive requirements contract" satisfies UCC § § 2-201 and 2-306.  Alternatively, plaintiff asks the Court to enter final judgment on the breach of contract claim pursuant to Rule 54(b), so that it may take an immediate appeal.

ANALYSIS

Plaintiff brings the subject motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  It is well settled that when making such a motion,

> the moving party must show that the Court overlooked the controlling decisions or factual matters that were put before the Court in the underlying motion. *Nakano v. Jamie Sadock, Inc.*, No. 98 Civ. 0515, 2000 WL 1010825, at *1 (S.D.N.Y. July 20, 2000); *Walsh v. McGee*, 918 F.Supp. 107, 110 (S.D.N.Y.1996). However, in addition, "[a] court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice." See *Nnebe v. Daus*, No. 06 Civ. 4991, 2006 WL 2309588, at *1 (S.D.N.Y. Aug. 7, 2006). New evidence, for these purposes, must be evidence that "could not have been found by due diligence." *Word v. Croce*, No. 01 Civ. 9614, 2004 WL 434038, at *4 (S.D.N.Y. March 9, 2004).
>
> These rules are "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." See *Walsh*, 918 F.Supp. at 110. Strict application of these rules also "prevent[s] the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." *Polar Int'l Brokerage Corp. v. Reeve*, 120 F.Supp.2d 267, 268-69 (S.D.N.Y. 2000). The moving party may not use a motion for reconsideration to advance new facts, arguments, or theories that were available but not previously presented to the Court. See *Graham v. Sullivan*, No. 86 Civ. 163, 2002 WL 31175181, at *2 (S.D.N.Y. Sept. 23, 2002); *Leonard v. Lowe's Home Ctrs., Inc.*, No. 00 Civ. 9585, at *2 (S.D.N.Y. April 12, 2002).

---

undermine the very reason for a Statute of Frauds in the first instance. That issue must be determined from the documents themselves, as a matter of law.") (citation omitted).

*U.S. v. Billini*, No. 99 CR. 156(JGK), 2006 WL 3457834 at *1 (S.D.N.Y. Nov. 22, 2006). A district court's decision to deny a motion under Rule 59(e) is reviewed on appeal for abuse of discretion. *See Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004).

The issue before the Court is whether or not the parties' memorandum satisfies New York's statute of frauds, UCC § 2-201. In New York it is well settled that

> [t]he purpose of Statutes of Frauds is to avoid fraud by preventing the enforcement of contracts that were never in fact made. Generally the statute is satisfied by some note or memorandum signed by the party to be charged that is adequate to establish an agreement when considered in light of the admitted facts and surrounding circumstances.
> ***
> [T]he Statute of Frauds applicable to the sale of goods provides that the agreement is binding even if the writing omits or incorrectly states a term of the agreement. Even the price need not be specified (Uniform Commercial Code § 2-201). It is sufficient that the writing affords a basis for believing the offered oral evidence rests on a real transaction (Uniform Commercial Code § 2-201, comment 1).

*Henry L. Fox Co., Inc. v. William Kaufman Org., Ltd.*, 74 N.Y.2d 136, 140, 544 N.Y.S.2d 565, 567-68 (1989) (citations omitted). However, even "[u]nder the UCC, the quantity term must be stated. *Rosenfeld v. Basquiat*, 78 F.3d 84, 93 (2d Cir. 1996) ("Under the U.C.C., the only term that must appear in the writing is the quantity.") (citing N.Y. U.C.C. § 2-201 cmt. 1, which states, in relevant part, that "[t]he only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated.").

Plaintiff contends that reconsideration is appropriate for several reasons. First, plaintiff maintains that the Court should not have relied upon *MDC Corp., Inc. v. John H. Harland*, 228 F.Supp.2d 387 (S.D.N.Y. 2002) in dismissing the contract claim, since

6

that case provides "persuasive support" for the idea that a "non-exclusive requirements contract" satisfies the statute of frauds. The Court disagrees. Unlike the instant case, the issue in *MDC Corp.* was not whether the parties' agreement satisfied the statute of frauds. Instead, the *MDC Corp.* decision, and particularly the portion of the decision that plaintiff cites, involved the question of whether the defendant purchaser could be found liable for breaching the parties' contract by failing to use its bests efforts to sell the plaintiff supplier's products. *Id*. at 392-393.[4] In short, *MDC Corp*. is simply not a statute of frauds case. On the other hand, as the Court noted in its prior decision, the court in *MDC Corp*. noted in passing that "a requirements contract obligates the buyer to buy *exclusively* from a particular supplier." *Id*. at 392 (emphasis added). Consequently, the *MDC Corp*. case does not support plaintiff's argument.

Next, plaintiff contends that the Court erred by finding that *Adipar Ltd. v. PLD Intern. Corp.*, No. 01-Civ-0765, 2002 WL 31740622 at *6 (S.D.N.Y. Dec. 6, 2002) and *Access Northern Sec. Corp. v. Linear Corp.*, No. 97 Civ-2937, 1998 WL 566815 at *2 n.4 (S.D.N.Y. Sep. 4,1998) are inapposite to the instant case. (Decision and Order [#20] p. 12). That is, plaintiff contends that both of these cases indicate that so-called "non-exclusive requirements contracts" satisfy the statute of frauds. Again, the Court disagees. As for the *Adipar* case, it is not a statute of frauds case. Accordingly, the court in *Adipar* had no occasion to consider whether a "non-exclusive requirements contract" satisfies the statute of frauds. Nor is *Adipar* a "requirements contract" case.

---

[4]Corning apparently focuses on the fact that the *supplier* in the *MDC Corp.* case, Harland, was not contractually obligated to sell exclusively to the purchaser, Artistic. *Id*., 228 F.Supp.2d at 393. Corning fails to understand that in *MDC Corp.*, as in the instant case, the exclusivity requirement was on the buyer, not the seller. Here, similarly, the fact that Corning was free to sell to companies other than VWR has no bearing on whether the subject agreement was an exclusive *requirements* contract.

Case 6:05-cv-06532-CJS-JWF   Document 33   Filed 03/16/07   Page 8 of 12

Instead, the issue of "exclusivity" in that case involved the plaintiff's right to sell the defendant's perfume exclusively to a certain number of retailers on the secondary U.S. fragrance market; it did not involve an agreement to buy exclusively from the defendant. Similarly, the *Access Northern* case involves neither the statute of frauds nor a situation where a New York court recognized a "non-exclusive requirements contract."[5]

Next, plaintiff cites a case, *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 548 NYS2d 920 (1989), which it did not raise originally in opposition to the motion to dismiss, for the proposition that, "despite the presence of another supplier, an agreement may be sufficiently exclusive to be a requirements contract." (Pl. Memo of Law [#21-6] p. 6). However, unlike the instant case, which involves a purported contract for the sale of goods that lacks a quantity term, *Cobble Hill Nursing Home* involved a real estate contract that lacked a definite price term. Moreover, while *Cobble Hill Nursing Home* recites the general rule that "[b]efore rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear,"[6] it says nothing concerning UCC § 2-201's specific requirement that a contract for the sale of goods contain a quantity term, or § 2-306's requirement that a requirements contract be exclusive. Accordingly, the Court does not find the *Cobble*

---

[5]Similar to the *Adipar* case, *Access Northern* involves an alleged breach of an exclusive distributorship agreement. As in the *Adipar* case, the manufacturer in *Northern Access*, while granting the supplier an exclusive distributorship, reserved the right to sell directly to a certain specifically-named customers. In this regard, the exclusive distributorship was not truly "exclusive." However, the contract involved was not a requirements contract, and the parties were not attempting to rely on UCC § 2-306 to provide an essential term of the agreement. Consequently, the case is not relevant to the instant motion.

[6]*Cobble Hill Nursing Home, Inc. v. Henry and Warren Corp.*, 74 N.Y.2d at 483, 548 N.Y.S.2d at 923 ( Citing 1 WILLISTON, CONTRACTS § 47, at 153-156 [3d ed. 1957]).

8

*Hill Nursing Home* decision to be helpful.[7]

Plaintiff additionally relies on *PMC Corp. v. Houston Wire & Cable Co.*, 147 N.H. 685, 797 A.2d 125 (S. Ct. New Hampshire 2002), another case not cited during the original briefing on defendant's motion. In *PMC Corp.*, the parties' agreement stated, in relevant part:

> [Houston] agrees in principal [ sic] with the proposed agreement submitted by PMC January 4, 1995. We have reviewed that proposal and have added some additional details to finalize the 1995 purchasing agreement between [Houston] and PMC as follows....
>
> 5.0 [Houston] expects to purchase in excess of $2,000,000 of thermocouple products in 1995. [Houston] recognizes PMC as a major thermocouple manufacturer and preferred supplier for this thermocouple business. While [Houston] cannot commit to exclusive purchase of this total from PMC, [Houston] recognizes PMC as a preferred supplier. As such, with competitive pricing, service, delivery, and the above rebate schedule PMC can expect to receive a major share of the total thermocouple business. It is not unrealistic to project total purchases by [Houston] from PMC to be in the $2,000,000 range in 1995.
>
> 6.0 Future business: With the commitment that PMC has made to help [Houston] grow its thermocouple business [Houston] is projecting future thermocouple business as follows:
>
> 1996 $3,000,000
>
> 1997 $4,000,000
>
> It is also [Houston's] intent to purchase the major portion of this product from PMC.

---

[7]The Court similarly finds that the case of *Porous Media Corp. v.Midland Brake, Inc.*, 220 F.3d 954 (8th Cir. 2000) is inapposite. In that case, which did not involve the statute of frauds, the defendant purchaser agreed to buy *all* of its air-brake components from the plaintiff supplier, unless the products were either poor-quality or delivered late. Here, VWR reserved the right to buy from suppliers other than Corning regardless of how Corning performed. In other words, unlike in *Porous Media*, here Corning had no control over how much product VWR might potentially buy from other suppliers. That determination was based solely on a factor outside of Corning's control, namely, the purchasing decisions of VWR's Tier II customers.

9

*Id*., 147 N.H. at 687-688, 797 A.2d at 127.  Finding that a reasonable jury could find the aforementioned language sufficient to create an exclusive requirements contract, the New Hampshire Supreme Court stated:

> Because a requirements contract depends on exclusivity to determine the quantity, there can be no valid requirements contract without it.  However, despite the presence of another supplier, the contract may be sufficiently "exclusive." This may occur where a purchaser agrees to purchase exclusively from a seller *up to a certain quantity*.  In this case, the predominating issue was whether Houston's promise to purchase a "major share" or "major portion" of its requirements provided the jury with a reasonably certain basis for giving an appropriate remedy. Because the January 17, 1995 letter contains language from which a jury could have determined that Houston agreed to purchase exclusively from PMC *up to a certain quantity*, the superior court did not err in instructing the jury on requirements contracts.

*Id*., 147 N.H. at 692, 797 A.2d at 130 (emphasis added; citations and internal quotation marks omitted); *see also, Id*. at 147 N.H. 692, 797 A.2d at 131 (""[T]he parties can specify all requirements or a *specific portion* of the buyer's requirements.") (emphasis added).

Significantly, this language from the *PMC Corp*. decision was quoted from a leading U.C.C. treatise, 1 JAMES J. WHITE ET AL., WHITE & SUMMERS UNIFORM COMMERCIAL CODE § 3-9 (4th ed.), which states, in relevant part:

> Because section 2- 306 depends on exclusivity to determine the quantity, there can be no valid requirements contract without it. As such, where a retailer of gasoline had an agreement to purchase its supply from a wholesaler, but was free to purchase from other suppliers, the absence of exclusivity could not be cured by 2- 306, and the agreement was found unenforceable for lack of mutuality.
>
> Despite the presence of another supplier, the contract may be sufficiently "exclusive." This may occur where a purchaser agrees to purchase exclusively from a seller up to a certain quantity.

(footnotes omitted). Consequently, a quantity term is sufficient under UCC § 2-201 if it establishes a minimum quantity. *See, Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 749 (2d Cir. 1998) ("The commentary to the U.C.C. [ § 2-201] indicates that quantity 'need not be accurately stated but recovery is limited to the amount stated.' This language suggests that description of quantity in terms of a range satisfies the Statute of Frauds but that the plaintiff may be limited in its recovery to the lower end of the range.") (construing Conn. Gen.Stat. Ann. § 42a-2-201, which is identical to New York U.C.C. § 2-201).[8]

Applying these principles of law to the instant case, the Court concludes that the parties' memorandum satisfies UCC § 2-201, via the gap-filling provision of § 2-306, since it can be read as requiring VWR to purchase its requirements of reusable glass exclusively from Corning up to a certain quantity. Specifically, the memorandum can be construed as requiring VWR to purchase its requirements of reusable glass for all customers, except Tier II customers, exclusively from Corning. The memorandum also appears to commit VWR to selling Corning's products exclusively to its Tier II customers, unless and until they demand otherwise, but the point is that the memorandum establishes a minimum requirement without regard to the Tier II customers. Accordingly, the agreement is sufficiently exclusive to establish a requirements contract.

In its prior Decision and Order [#20], the Court found it significant that the

---

[8] VWR contends that the *PMC Corp.* decision is "irreconcilably inconsistent with New York law because [it] stretch[es] the term 'exclusivity' well beyond its commonly accepted meaning." (Def. Memo [#24] p. 9). However, regardless of whether this Court, or any New York court, would have reached the same conclusion as the court in *PMC Corp.* based on the facts in that case, the Court believes that the *PMC Corp.* decision accurately states the applicable principles of law.

memorandum provided no way of knowing or even estimating how much or how little reusable glass the Tier II customers might buy, and therefore the Court found that the memorandum lacked a sufficient quantity term. Upon reconsideration, however, the Court finds that this uncertainty as to Tier II customers does not prevent the memorandum from satisfying the statute of frauds, since the memorandum can be construed to mean that VWR is committing to buying exclusively from Corning, at the least, its requirements for all of its other customers, thereby establishing a minimum quantity, which satisfies the statute of frauds.[9]

## CONCLUSION

For the foregoing reasons plaintiff's motion for reconsideration [#21] is granted, defendant's motion to dismiss [#9] is denied, and plaintiff's motion to amend [#15] is granted.

SO ORDERED.

Dated: Rochester, New York
      March 15, 2007                   ENTER:

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge

---

[9] This threshold determination does not resolve the underlying dispute. *Bazak Intern. Corp. v. Mast Industries, Inc.*, 73 N.Y.2d at 118, 538 N.Y.S.2d at 505 ("Assuming that the writings are sufficient on their face to surmount the Statute of Frauds defense, plaintiff still has the burden of proving the alleged agreement . . . . The present motion settles only the question whether the action can go forward at all; . . . [P]laintiff has yet to establish the allegations of its complaint in order for there to be any recovery against defendant.").